IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES DEPARTMENT<br>OF THE INTERIOR,<br><br>  Defendant. | No. C 11-01880 WHA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT** |

**INTRODUCTION**

In this Freedom of Information Act case, plaintiff moves for summary judgment on the claim presented in its complaint. Defendant submits a cross motion for summary judgment on the same. For the reasons set forth below, plaintiff's motion is **DENIED**, and defendant's cross motion is **GRANTED**.

**STATEMENT**

Plaintiff American Small Business League is a national organization established to research and focus public attention on emerging small business issues. In 2008, Department of Interior's Office of the Inspector General published a report, *Interior Misstated Achievement of Small Business Goals by Including Fortune 500 Companies* ("report"). The report presented DOI's "evaluation to determine if the . . . DOI and its bureaus [had] accurately reported their small business contracting achievement" (Belshaw Decl. Exh. A at 1). DOI found "about $5.7 million in awards to large businesses for which DOI received small business credit in fiscal years

2006–2007" (*ibid*.). Based on review of data and interviews of DOI employees, the report identified "data entry mistakes, reliance on incorrect data, and a failure on the part of contracting officials to verify business size reported in the [Central Contractor Registration]," as the main reasons that "contracts to large businesses [had] been incorrectly coded as small business contracts" (*id.* at 2).

On June 2, 2010, plaintiff submitted a FOIA request to the DOI requesting (Evans Decl. Exh. 1):

> The name, title and contact information for any, all, each and every contracting officer or official referenced on page 3 in the section titled "Data entry mistakes," that was interviewed, quoted or spoken with in compiling Report No. W-EV-MOI-0003-2008, titled "Interior Misstated Achievement of Small Business Goals by Including Fortune 500 Companies," which was released in July 2008.

DOI acknowledged plaintiff's FOIA request on June 9 but provided no substantive response due to "backlog of requests and unforeseen circumstances" (Evans Decl. Exh. 2). On September 10, in response to plaintiff's FOIA request, defendant released seven pages of documents to plaintiff but "redacted the name and contact information of the agency contracting officers under 5 U.S.C. § 552 (b)(6)" (Opp. 2; *see* Evans Decl. Exh. 3). Plaintiff filed an administrative appeal of DOI's redactions on September 13 (Evans Decl. Exh. 4). DOI acknowledged receipt of the appeal on September 30 and had no further correspondence with plaintiff (Evans Decl. Exh. 5).

Plaintiff filed a complaint in federal district court on April 19, 2011, alleging defendant violated FOIA and wrongfully withheld agency records. Plaintiff seeks an order "from this Court compelling an immediate release and disclosure of the requested documents in their entirely [sic] and without redaction" (Compl. ¶ 12).

Plaintiff moves for summary judgment on its one cause of action in the complaint. Defendant cross moves for summary judgment on the same.

**ANALYSIS**

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of

producing evidence that would entitle it to a directed verdict if uncontroverted at trial. *See C.A.R. Transp. Brokerage Co. v. Darden Rests.*, *Inc.*, 213 F.3d 474 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claims, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show there exists a genuine issue of material fact. *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

Plaintiff alleges defendant "wrongfully withheld documents" requested by plaintiff in its FOIA request dated June 2, 2010 (Compl. ¶ 10). Plaintiff requested the "name, title, and contact information for any, all, each and every contracting officer or official referenced on page 3" of the report (Br. 4). Defendant appends as exhibit three to its response and cross motion, seven pages of documents released in response to plaintiff's FOIA request. Defendant acknowledges it redacted information in the documents it released to plaintiff pursuant to 5 U.S.C. 552(b)(6) ("exemption six").

Thus, the only exemption challenged in this case is exemption six, which exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

### 1. APPLICABILITY OF EXEMPTION SIX.

A government agency that withholds documents pursuant to one of the enumerated FOIA exemptions has the burden to sustain its action. 5 U.S.C. 552(a)(4)(B).

Exemption six permits withholding of information only when two requirements are met: "*first*, the information must be contained in personnel, medical, or 'similar files,' and *second*, the information must be of such a nature that its disclosure would constitute a clearly unwarranted invasion of personal privacy." *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 598 (1982) (emphasis added). We address each requirement in turn.

3

The parties disagree over whether the withheld information was contained in personnel, medical, or similar files. The Supreme Court has interpreted the term "similar files . . . to have a broad, rather than a narrow, meaning. *Id.* at 600. Indeed, the Supreme Court *disagreed* with respondent's argument in *United States Department of State v. Washington Post Co.* — the same argument plaintiff makes here — that the term "similar files . . . is limited to files containing 'intimate details' and 'highly personal' information." *Ibid*. Instead, the Supreme Court defined "similar file" broadly as government records containing "information which applies to a particular individual." *Id.* at 602. Our court of appeals has done the same and stated that "[g]overnment records containing information that applies to particular individuals satisfy the threshold test of Exemption 6." *Forest Serv. Employees for Envt'l. Ethics v. United States Forest Serv.*, 524 F.3d 1021, 1024 (2008). Specifically, our court of appeals recently affirmed a district court's conclusion that the names and identifying information of employees included in an investigative report concerning a fire in which two Forest Service employees perished, met the "similar file" requirement of exemption six. *Ibid*.

DOI submitted seven pages of documents in response to plaintiff's FOIA request. They were retrieved from the "Auto Audit database maintained by OIG[,] . . . [which] contains the workpapers of the auditors and the documents collected by the auditors" (Evans Decl. Exh. 3 at 1). The workpapers are records "maintained by OIG auditors who interviewed DOI employees to determine why the DOI had overstated its achievements in meeting certain business goals" (Evans Decl. ¶ 9). The workpapers, thus, are the "files" at issue.

Defendant presents the seven pages of workpapers responsive to plaintiff's FOIA request along with the letter defendant sent to plaintiff, indicating that "the contract number, names, [and] telephone numbers of the employees interviewed" were redacted pursuant to exemption six, as evidence that plaintiff's requested information was contained in a "similar file" (Evans Decl. Exh. 3). Plaintiff presents no evidence to show that the withheld information was not personal identifying information. Plaintiff mistakenly contends that the Supreme Court intended the term similar files to apply only to files, which "contain intimate details of a highly personal nature"

4

1 (Plaintiff Reply 2). But the Supreme Court expressly rejected that contention in *United States*
2 *Department of State v Washington Post Co.* 456 U.S. at 600.

3 Plaintiff has not produced any evidence to negate any essential element that defendant is
4 required to show at trial to meet its burden of proof that exemption six applies to the files at issue
5 here.

### 2. BALANCING.

7 The second inquiry is whether disclosure of the records at issue would "constitute a
8 clearly unwarranted invasion of personal privacy." 5 U.S.C. 552(b)(6). This requires a balancing
9 of the public's right to disclosure against the individual's right to privacy. *United States Dep't of*
10 *Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989). The "only relevant
11 public interest in the FOIA balancing analysis [is] the extent to which disclosure of the
12 information sought would shed light on an agency's performance of its statutory duties or
13 otherwise let citizens know what their government is up to." *United States Dep't of Def. v. Fed.*
14 *Labor Relations Auth.*, 510 U.S. 487, 497 (1994). The Supreme Court has instructed that whether
15 an "invasion of privacy is *warranted* cannot turn on the purposes for which the request for
16 information is made." *Reporters Comm. for Freedom of Press*, 489 U.S. at 771 (emphasis in
17 original). Thus, plaintiff's personal interest in the report has no bearing on the analysis.

18 *First*, we turn to the privacy interest. Defendant asserts privacy interests arising from
19 "embarrassment, humiliation, and possible harassment," and as a secondary harm, asserts that
20 disclosure would have a "chilling effect . . . on the candor of future DOI employees being
21 interviewed in OIG audits . . . [which] has the potential to damage DOI Inspector General's
22 ability to fulfill her important statutory mission" (Opp. 6–7).

23 Our court of appeals has held that the possibility of harassment, embarrassment, stigma,
24 and retaliation are cognizable privacy interests under the exemption six precedents. *See*
25 *Prudential v. United States Dep't of Housing and Urban Dev.*, 648 F.3d 768, 774–75 (9th Cir.
26 2011). Defendant shows, through introduction of the workpapers as evidence, that the
27 workpapers contain interview reports of contracting officers and include candid acknowledgment
28 of mistakes that resulted in large corporations being awarded contracts intended for small

5

businesses (Evans Decl. Exh 3). Plaintiff contends, however, that there is only one contracting officer who admitted a mistake and who "might be embarrassed" and that defendant only offers a "speculative and conclusory opinion" in support of the "*potential*[] [to] subject [that officer] to embarrassment, loss of reputation or harassment" (Plaintiff Reply 3).

The seven pages of workpapers, submitted in response to plaintiff's FOIA request and appended to defendant's opposition and cross motion, abound with examples of contracting officers disclosing their own mistakes (Evans Decl. Exh. 3). And defendant points to plaintiff's own statements as additional evidence that the contracting officers, whose names are redacted, will be embarrassed, humiliated, or possibly harassed if their names and contact information are released in connection with the reported mistakes (Opp. 6). Indeed, plaintiff has twice stated its own intentions to contact the contracting officers named in the report and conduct a follow up investigation (Plaintiff Reply 5; *see* Evans Decl. Exh 4).

Defendant claims a secondary harm to its privacy interest, asserting that disclosure of the requested information would have a chilling effect on its employees' willingness to speak with candor in future reports. The court of appeals for the District of Columbia has considered this to be a valid factor to be weighed in balancing the public and private interests. *See Ripskis v. Dep't of Housing and Urban Dev.*, 746 F.2d 1, 3 (D.C. Cir. 1984).

*Second*, we now consider the public interest. "[T]o compel the disclosure of . . . employees' identities, such information must 'appreciably further' the public's right to monitor the agency's action." *Forest Serv. Employees for Envt'l Ethics*, 524 F.3d at 1027. Plaintiff contends summarily that the requested information is needed "to open the agency action to the light of public scrutiny" (Plaintiff Reply 5). Defendant counters that the report and its findings have already been released, and release of the names, titles, and contact information will not further the public good (Opp. 7).

This order agrees. Revelation of mere names, titles, and contact information of the employees will not "appreciably further the public's right to monitor the agency's action." The order recognizes the need for accountability and for the public to be able to "know what their government is up to," but here, where mere contracting officers have made data entry mistakes or

6

relied on incorrect determinations made by other agencies, the Court concludes that invasion of their privacy is not warranted (Evans Decl. Exh. 3).  Thus, in this case, the employees' right of privacy is greater than the public interest served by disclosure of their private information.

Defendant has met its burden to prove exemption six applies and that disclosure of the requested information would "constitute a clearly unwarranted invasion of personal privacy." Plaintiff fails to negate any essential element for which defendant bears the burden of proof.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is **DENIED**. Defendant's cross motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Dated: October 5, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE